## Dunkle *v.* The Baltimore & Ohio Railroad Co., Appellant.

Argued November 19, 1947. Before RHODES, P. J., HIRT, DITHRICH, ROSS, ARNOLD and FINE, JJ. (RENO, J., absent).

*Vincent M. Casey,* with him *V. J. Rich,* and *Margiotti & Casey,* for appellant.

*Robbin B. Wolf,* for appellee.

OPINION BY FINE, J., March 8, 1948:

In this workmen's compensation case the employer appeals from the dismissal of its petition to terminate a compensation agreement for total disability. The referee, the board, and the court below all agreed the dismissal of the petition was proper.

The claimant was employed as a carpenter for the Baltimore and Ohio Railroad Company and, in the course of his employment on July 30, 1938, was jacking "I" beams on top of a coal tipple when a wooden supporting strut accidentally broke, striking both of claimant's legs. As a result, he sustained contusions of the

left lower leg, fracture of the internal malleolus and fracture of the distal third of the fibula of the right leg. After medical treatment for about five months, the claimant returned to his employment on December 27, 1938, and continued to work until July 6, 1939, when increasing pain necessitated his leaving work for almost one year, or until June 17, 1940. On that day he again resumed his work and pursued his employment until January 25, 1941, when the severity of the pain forced him to quit, and since that time he has been unable to work. The appellant concedes that the condition of the claimant's leg "is such that when he uses it for any length of time he suffers pain and is probably unable to follow his regular occupation."

The original compensation agreement was executed on February 8, 1939, and subsequent to respective intervening final receipts, compensation was twice reinstated by supplemental agreements. Under the compensation agreements as made, revived and reinstated, the claimant received total disability payments for a period of 248 6/7 weeks at the rate of $18.00 per week. On November 28, 1944, the employer filed its petition to terminate compensation because the injury has "resolved itself into a specific loss of the industrial use of the right leg" within the meaning of section 306(c) of the Workmen's Compensation Act of June 2, 1915, P. L. 736, as amended by the Act of June 4, 1937, P. L. 1552, Article III, section 306 (c), 77 PS sec. 513. The relevant provisions of section 306(c), supra, in effect at the time of the accident,[1] provided, inter alia: "For the loss of a leg, sixty-five per centum of wages during two

[1] In *Artac v. Union Collieries Co.*, 149 Pa. Superior Ct. 449, 27 A. 2d 782, this Court held that section 306(b) of the Workmen's Compensation Act as amended by the Act of June 21, 1939, P. L. 520, section 1, 77 PS §512, which provides that the term "earning power" as used in section 306(b) shall in no case be less than the weekly amount which the employee receives after the accident, is not procedural but substantive, and is not applicable to compensation for

hundred and fifty weeks . . . Permanent loss of the use of a . . . leg . . . for industrial purposes,[2] shall be considered as the equivalent of the loss of such . . . leg. . . ." At the hearing before the referee on petition and answer, the employer amended "the petition (to terminate) in the alternative that the claimant is not suffering any disability as a result of his injury." That amendment does not square with the employer's concession that the claimant suffers pain and is probably unable to follow his regular occupation. After hearing able medical experts for both the claimant and the employer, the referee found that, "Claimant is totally disabled as the result of his injury of July 30, 1938", and, "Claimant's disability is not confined to his right leg, but extends beyond that, into his back, as the result of the involvement of the sciatic nerve, and is the result of his original injury, whether by reason of pressure of the cast on the nerve or by reason of a nerve being injured at the time of accident." The board affirmed the referee and the court below later affirmed the board and entered judgment for the claimant for "compensation payments . . . on the basis of total disability. . . .", from which the employer appealed.

This appeal poses for our determination questions as to the extent of claimant's injuries, and whether he should be compensated under section 306(c) of the Act of June 2, 1915, P. L. 736, as amended by the Act of June 4, 1937, P. L. 1552, Art. III, section 1, 77 PS §513, for the loss of the right leg (as argued by employer), or

disability sustained in an accident before its effective date. To the same effect are provisions of sections 306(a) and 306(c) hereinabove considered.

[2] By the Act of June 21, 1939, P. L. 520, section 1, as amended by the Act of May 18, 1945, P. L. 671, section 1, 77 PS §513, the words "for industrial purposes" were eliminated from section 306(c), and under those amendments the schedule of compensation for disability for the loss of a leg was fixed at 66⅔% of claimant's wages during 215 weeks.

under section 306(a) of the Workmen's Compensation Act, as amended by the Act of June 4, 1937,[3] supra, for total disability (as urged by the claimant and approved by the compensation authorities and the court below). In support of its contention and in aid of its petition for termination of compensation, the appellant called two medical experts. Dr. Paul R. Seiber diagnosed claimant's ailment as acute sciatic neuritis of the right lower leg with residual palsy of the peroneal nerve; that the claimant's condition has no causal connection or relationship to the accident. Dr. John A. Malcolm testified that upon examination on October 10, 1945, he found a shrinking of the anterior tibial muscles of the leg, numbness of the peroneal nerve, weakness, atrophy, and loss of ankle jerk. He likewise testified that there was no causal connection between the claimant's condition and his accidental injury. It is pertinent to note that in the supplemental agreements the employer agreed that "The status of disability of . . . claimant has recurred (on) account of injury sustained July 30, 1938."

Three medical experts supported the claimant. Dr. Paul H. Franklin testified claimant was totally disabled as a result of his accidental injury, which he described as resulting from a traumatic injury to the nerves of the leg, involving the sciatic nerve, marked by atrophy of the muscles of the right leg, and tenderness along the nerve track of the leg. Dr. S. M. Summerville testified that claimant was totally disabled from manual labor; that he operated upon claimant's leg and had removed scar tissues which had enveloped the anterior tibial nerve below the knee; that this scar tissue was traumatic in origin and was caused by pressure of the "cast" which was applied to claimant's leg after the accident. Dr. H. M. Wellman testified that the claimant's sciatic nerve involvement which followed about two years after the

---

[3] Sections 306(a) and (c) of the Workmen's Compensation Act were further amended by the Act of June 21, 1939, P. L. 520, section 1, and the Act of May 18, 1945, P. L. 671, section 1, 77 PS §§511, 513.

accident, caused the pain in the claimant's hip and was related to the accidental injury of the foot.

There is little doubt the injury to the structure of the sciatic nerve brought persistent pain above the leg resulting in general weakness, diminution of nerve strength, loss of weight, loss of sleep and predisposition to fatigue. The physical structure of the body was affected in a manner not usually associated with accidents of this character and the sequalæ, in addition to the loss of the right leg, caused total disability. The medical testimony adduced by claimant supports the conclusion the body structure above the leg was permanently injured, either by the original trauma or by pressure of the "cast" damaging the sciatic nerve structurally. Moreover, on the defendant, who is seeking to change the status created by the parties themselves when they entered into their compensation agreement, rested the burden of proof to establish the averments in its petition to terminate, which it failed to discharge.

It was the function of the compensation authorities to pass upon the credibility of the witnesses, to resolve all conflicts in the testimony, and to determine the weight to be given the testimony of each witness including those who qualified as experts. "The medical testimony before the referee was conflicting, and it was for him and the board to appraise it and resolve the conflict. They must be left free to make their own findings and we have no right to tell them how they shall exercise that function. . . . The testimony need not be reviewed. It is enough to say that the two physicians called by claimant testified that the back sprain suffered by claimant at the time of the accident has progressed and become a chronic disability": *Mouhat v. Board of Public Education of Pittsburgh,* 159 Pa. Superior Ct. 423, 427, 48 A. 2d 20, 22.

That the claimant's injuries extended beyond the leg proper and affected the physical structure of claimant's body is amply supported by competent evidence. The

issue is factual and consequently for the compensation authorities whose findings cannot be disturbed. It follows that section 306(a), 77 PS §511, was properly applied by the compensation authorities; that the claimant is entitled to compensation for total disability, and judgment should be affirmed. See *Manno v. Tri-State Engineering Co.*, 159 Pa. Superior Ct. 267, 48 A. 2d 122; *Snyder v. Hoffman*, 159 Pa. Superior Ct. 392, 48 A. 2d 78; *Cole v. Stewart*, 111 Pa. Superior Ct. 561, 170 A. 311; *Toth v. Pittsburgh Terminal Coal Corp.*, 110 Pa. Superior Ct. 163, 167 A. 438.

Judgment is affirmed.