Zbieg, Appellant, *v.* Rochester & Pittsburgh Coal Company.

Argued March 15, 1954. Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE and ERVIN, JJ.

*George Jerko,* with him *Carl A. Belin,* for appellant.

*G. W. Musser,* with him *Frank G. Smith* and *Smith, Maine, Whitsett & Lee,* for appellee.

OPINION BY HIRT, J., April 15, 1954:

Matthew Zbieg, a loader in a coal mine, suffered an injury from accident on August 17, 1950, in the course of his employment with the defendant. Thereupon an open agreement was entered into with him by the employer under which compensation for total disability was paid for the period ending August 31, 1951, amounting in all to $1,328.53. Subsequently, the defendant, in the belief that the disability of the injured employe had ceased, tendered $53.61 in full of compensation payments to September 15, 1951, and requested a final receipt. The tender was not accepted and Zbieg refused to sign the receipt. Thereupon the defendant petitioned for termination of the agreement, as of that date, under the second paragraph of §413 of the Act of June 21, 1939, P. L. 566, 77 PS §1513. The Board, in affirming the Referee with some modification, terminated the agreement and the lower court affirmed the order. In this appeal Zbieg contends that he is still disabled and therefore entitled to further

compensation. We are unable to find any merit in this appeal.

The compensation agreement recites that claimant suffered a "fracture involving distal shaft of right fibula just above ankle" when his foot slipped and a conveyor pan struck his leg. Two medical witnesses were called by the defendant in support of the petition to terminate. Dr. W. A. Hill testified that following the accident he reduced what he found to be "a simple fracture of the right fibula, about three inches above the ankle." This was the sole injury found by Dr. Hill and in his opinion appellant should have been able to return to work after ten or twelve weeks or about December 1, 1950. But appellant continued to complain of disabling pain in the right foot below the site of the fracture, when he walked. X-ray examination failed to show anything wrong with the foot but Dr. Hill continued to treat him over a period of a year, and two or three times a week gave the foot "physiotherapy, short wave and diathermy" treatments. Compensation was paid during the period. Dr. Hill "became convinced that there was no physical reason why he shouldn't go to work" but finally, in fairness to him, referred him to Dr. Frank A. Lorenzo a well-qualified specialist in traumatic surgery.

Dr. Lorenzo examined claimant on August 16, 1951. From an x-ray examination which he had ordered he testified "that the fibular fracture of the right leg had healed completely in good position", with "Callous formation satisfactory for weight bearing." From his examination, in the light of the history of the case as to which there was no dispute, Dr. Lorenzo concluded: "My examination revealed that extension lateral motion, rotation, adduction and abduction of the right ankle joint was normal. Manipulation did not produce any localized pain in the area of the old fracture. He complains of pain in the right metatarsal region.

X-ray examination reveals that the fibular fracture that he sustained in August, 1950, is completely healed and there is no reason why he should not have returned to his regular work as a coal loader many months ago." Based on these conclusions, the witness testified: "It is my opinion that this patient is definitely a neurotic and I am attempting to treat him from that standpoint . . . he has no swelling and no pathological evidence that there is anything that should cause him pain, and I feel he just simply doesn't want to work." His treatment of appellant ended on September 14, 1951.

At an adjourned hearing before the Referee, Dr. L. L. Hobbs, chief surgeon of the Elk County General Hospital, was called on behalf of the claimant. He made an examination of appellant on October 29, 1951 and, based on x-ray reports, stated: "He is a cripple. He can't use that right foot effectively." And to the question: "To what is that pain due?" he said: "Well the right fibula is bent to the left against the right tibia, and the fracture was never healed, and I believe nerve tissue is impinged on by the bent fibula, as near as I can tell you." Based on his examination and appellant's complaint of "pain on flexing of the foot and on hyperextension" this witness concluded that he was still disabled from the accident and estimated the degree of disability at "30% permanent total". Dr. Hobbs recommended that Zbieg be sent to Dr. Clayton W. Fortune, an orthopedic surgeon at Erie whom he regarded as "the best bone man in the country", for consultation. The suggestion was adopted by the Board and Dr. Fortune was appointed impartial expert.

Dr. Fortune read and considered all of the prior testimony in this record and he made a thorough examination of appellant on May 8, 1952, in the presence of Zbieg's son-in-law who acted as interpreter in developing the history of the case. This witness testi-

fied: "He has, what I consider normal motion present in the right ankle, patient having normal flexion, extension and normal inversion and eversion of the foot. On careful neurological examination of both lower extremities, I found no evidence of any sensory changes, reflexes were considered normal, and there was no measurable atrophy in the right leg . . ." X-ray examinations made by him disclosed a "slight deformity at this area as it is slightly depressed toward the tibial shaft." But these examinations of the right leg failed to reveal any pathology and he stated his conclusion thus: "After carefully reviewing my own history taken from this patient, and also considering the physical findings present, I believe that the complaints now present are all subjective . . . he had a simple fracture in the right leg only" which had completely healed. Dr. Fortune gave it as his professional opinion "that this patient has made a complete recovery".

The Referee in the conflict of evidence on the medical issues accepted the testimony of Dr. Fortune and found that all disability from the accident had ceased and terminated but not until April 26, 1952. On the same testimony the Board in effect found that claimant was cured from the fracture on August 15, 1951; and that if he had accepted the medical advice as to use of the right foot necessary to restore its function, and to convince himself that he has a useable leg, he would have been able to return to his former employment on September 15, 1951. Accordingly, the Board terminated the agreement and all compensation payments thereunder as of September 15, 1951. The lower court affirmed the Board.

From the above somewhat detailed review of the medical testimony it must be apparent that this claimant received every favorable consideration at the hands of the compensation authorities. And it is equally clear that the basic finding that the employer has met

the burden of establishing that appellant's disability had terminated is fully supported by competent and substantial evidence. We are powerless to disturb the finding, on appeal. *Baughman v. Hockensmith, etc., Co.,* 158 Pa. Superior Ct. 314, 44 A. 2d 764; *Rozauski v. Glen Alden Coal Co.,* 165 Pa. Superior Ct. 460, 69 A. 2d 192. The single remaining question is whether there is error of law in the finding of the Board as to the date when disability ceased.

While Dr. Fortune found that claimant had made a complete recovery from the injury it was his opinion that he could not immediately return to his former work because of disuse of the injured leg but that after light work for two or three weeks, during a reconditioning period, all disability would cease. Upon this testimony the Referee awarded additional compensation for the limited period from September 15, 1951 to April 25, 1952, but ordered that all compensation payments should then cease. The Board was not obliged to accept the recommendation of this impartial medical witness nor his medical testimony upon which it was based. *Bartman v. Jones & Laughlin,* 163 Pa. Superior Ct. 31, 60 A. 2d 565. Moreover there is other competent evidence which is wholly sufficient to support the finding of the Board: ". . . that if claimant had followed the treatment offered by Dr. Hill, his attending physician, his disability would have ceased as of September 15, 1951; that any disability existing after said date was due to the default of claimant". The physical therapy to which the Board referred, as the treatment prescribed by Dr. Hill, was exercise of the injured leg. In support of his opinion that claimant was able to return to work in August of 1951 Dr. Hill testified: "We attempted to get him to take exercises and to walk so far every day and to increase the distance, and we didn't get very far with him on that basis." The therapeutic value of this procedure was

recognized by Dr. Fortune in expressing the opinion: "that increasing activity and use [of the injured member] is indicated, and I feel if that was carried out last August [1951] that this patient would have rehabilitated himself in several weeks following." The refusal of claimant to supplement the "short wave and diathermy" treatments supplied by Dr. Hill, with physical exercise prescribed by him, amounted to a refusal of reasonable medical treatment under §302(f) of the amendment of the Workmen's Compensation Act of May 14, 1949, P. L. 1369, 77 PS §531. By his refusal, claimant forfeited all rights to compensation for continued disability resulting from such refusal as found by the Board upon sufficient evidence.

Judgment affirmed.