## Patterson, et al. *v.* Lenart, et al.

Argued May 10, 1973, before Judges KRAMER, MEN-CER and BLATT, sitting as a panel of three.

*Harold V. Fergus, Jr.,* with him *Scott H. Fergus* and *Fergus, Martin and Fergus,* for appellants.

*Paul N. Barna,* with him *Barna and Barna,* for appellee.

OPINION BY JUDGE MENCER, June 8, 1973:

On August 23, 1967, Sigmond Lenart (Lenart), while in the course of his employment with Frank O. Patterson, trading as Patterson Supply Company,[1] of Monongahela, Pennsylvania (Patterson), suffered an accidental injury resulting in a comminuted fracture of the tibia and fibula of his left leg. On September 7, 1967, Lenart and Patterson executed a compensation agreement and, in accord with its terms, Lenart was paid the sum of $52.50 each week from August 23, 1967 to December 3, 1968, for total disability resulting from the accidental injury of August 23, 1967.

Patterson filed a termination petition, dated January 20, 1969, alleging that on December 4, 1968, Lenart was able to return to work without a loss in earnings. Following a hearing, the Workmen's Compensation Referee dismissed Patterson's termination petition and ordered payments of compensation under the said compensation agreement to be reinstated and to continue for an indeterminate period, not to exceed the limitations provided by law. Patterson appealed to the Workmen's Compensation Appeal Board (Board) from the Referee's decision. The Board affirmed the Referee's determination and dismissed Patterson's appeal. Patterson then filed this appeal.

---

[1] For some unexplained reason the name of this company, for purposes of this appeal, has been shown to be "Patterson Construction Co."

Since Patterson initiated proceedings to terminate compensation payments being made to Lenart under a compensation agreement, the burden of proof is upon Patterson to show (1) that Lenart's disability from the accident has ceased and (2) that Lenart was no longer entitled, after December 4, 1969, to such payments. *Pellegrino v. Baldwin-Lima-Hamilton Corporation,* 5 Pa. Commonwealth Ct. 150, 289 A. 2d 531 (1972).

Where, as here, the decision of the Board is against the party having the burden of proof, the question on appellate review is whether the findings of the Board are consistent with each other and with its conclusions of law and its order and can be sustained without a capricious disregard of competent evidence. *Sherred v. Pittsburgh,* 7 Pa. Commonwealth Ct. 401, 299 A. 2d 381 (1973); *Frombach v. United States Steel Corp.,* 2 Pa. Commonwealth Ct. 556, 279 A. 2d 779 (1971). "To constitute a capricious disregard there must be a willful and deliberate disregard of competent testimony and relevant evidence which one of ordinary intelligence could not possibly have avoided in reaching the result." *Brown v. Atlantic and Gulf Stevedores, Inc.,* 2 Pa. Commonwealth Ct. 481, 483, 279 A. 2d 372, 373 (1971).

Patterson raises three questions here which we will briefly discuss. First, he asserts that Lenart is not entitled to benefits because of that portion of Section 306(e) of the Workmen's Compensation Act,[2] as amended and renumbered, 77 P.S. §531, which reads as follows: "If the employe shall refuse reasonable services of duly licensed practitioners of the healing arts, surgical, medical and hospital services, treatment, medicines and supplies, he shall forfeit all rights to compensation for any injury or any increase in his incapacity shown to have resulted from such refusal."

---

[2] Act of June 2, 1915, P. L. 736, as amended, 77 P.S. §1 et seq.

The difficulty with Patterson's contention is that the record does not disclose that Lenart either (1) refused medical services or (2) that any of his injuries or any increase in his incapacity was a result of his refusal. Lenart was in a full leg cast from groin to foot from the date of the accident, August 23, 1967, until March 18, 1969, with the exception of a five-day period in March of 1968.[3] Following bone graft surgery and the placement of an intermedullary nail from the knee to the ankle on March 27, 1968, Lenart was again placed in a leg cast. Upon his release from the hospital on April 13, 1968, his doctor testified that "I advised [Lenart] when to see me in the office or the hospital with specific instructions as to follow-up care."[4] The doctor never disclosed what the instructions were or more importantly when it was that Lenart was to see him. Lenart testified that the doctor told him "to come back"[5] and "we're going to leave this cast on a little bit longer than what we did the last time."[6] The initial cast and its replacement were on seven months. In any event, Lenart did not return for nearly twelve months. However, we view this, not as a *refusal* to receive medical services or treatment, but merely as personal neglect. A person in a cast is not refusing treatment even though he may be dilatory in returning to the doctor. There is no showing that Lenart did not intend to return to the doctor relative to having the cast removed.

More important, the record discloses that this delay on Lenart's part in revisiting his doctor did not increase his incapacity or adversely affect his injury. It is this factor that distinguishes this case from *Zbieg v.*

---

[3] The first cast was removed on November 24, 1967 and a second cast was placed on Lenart's left leg that same day.

[4] Notes of Testimony, pages 10a, 11a.

[5] Notes of Testimony, page 55a.

[6] Notes of Testimony, page 55a.

*Rochester and Rochester Coal Company*, 175 Pa. Superior Ct. 308, 104 A. 2d 158 (1954), and makes that case inapposite here. *Compare Spina v. Gahagan Construction Corp.*, 184 Pa. Superior Ct. 420, 135 A. 2d 760 (1957), and *Dunkle v. Baltimore and Ohio Railroad Co.*, 162 Pa. Superior Ct. 340, 57 A. 2d 714 (1948). The doctor was asked what he found on March 18, 1969, when he removed the cast that he placed on Lenart's left leg some eleven months earlier, and his reply was that "[f]ortunately for both the patient and myself, I found his wounds to be healing well and his x-rays to show good healing with no major complication."[7]

Subsequently, Lenart developed osteoporosis, which is a demineralization or departure of calcium from the bone. The only medical testimony concerning the cause of this condition was that of Dr. Ramaswamy, called by Lenart, who testified that he "felt that prolonged cast immobilization resulted in osteoporosis. . . ."[8] No one testified as to when the cast placed on Lenart on March 27, 1968 would normally have been removed, and the first cast had remained on for seven months with only a five-day removal to prepare for the bone surgery of March 27, 1968. Dr. Ramaswamy testified that having the leg in a cast from August 22, 1967 to March 18, 1969 would cause osteoporosis.

We view the record in this case insufficient to allow us to reach the conclusion that Lenart forfeited his rights to compensation.

Next, Patterson contends that Lenart suffered a specific loss of a leg and therefore the Referee erred in dismissing the petition to terminate. Recently in *Supreme Clothes, Inc. v. Carnovale*, 7 Pa. Commonwealth Ct. 253, 256, 298 A. 2d 640, 641-42 (1973), we set forth the law applicable to this question:

---

[7] Notes of Testimony, page 11a.

[8] Notes of Testimony, page 7b.

"In cases of specific loss claims the well-established rule is that an employee who sustains an injury adjudged compensable under Section 306(c) of the Workmen's Compensation Act (77 P.S. §513) is not entitled to additional compensation, beyond that provided under Section 306(c), even though he may be totally disabled by the injury. Yanik v. Pittsburgh Terminal Coal Corporation, 150 Pa. Superior Ct. 148, 27 A. 2d 564 (1942), Hayden v. Stony Spring Coal Company et al., 157 Pa. Superior Ct. 423, 43 A. 2d 384 (1945).

"However, there is an exception to the general rule. A claimant is entitled to total disability benefits under Section 306(a) in addition to benefits for specific loss under Section 306(c) where there is a 'destruction, derangement or deficiency in the organs of the other parts of the body.' Thus if a specific loss injury results in disability which is separate and distinct from that which normally follows such an injury and which is the direct result of the injury, then benefits for total disability are allowed in addition to benefits for specific loss. Lente v. Luci, 275 Pa. 217, 222, 119 A. 132 (1922)."

Here the medical testimony establishes that the fracture of Lenart's leg required bone grafting from his hip area and that he has consistently complained about pain in his back and edema, a swelling of the ankle. Dr. Parent, called by Patterson, who performed the bone surgery on Lenart, gave the following answers to questions concerning Lenart's back pain: "Q. Doctor, the patient complains of pain not only in the hip area where the incision was but also in the area of the lower back. What would be causing that pain there? A. The pain in the hip area where I took the bone graft could be caused by the surgery and removal of the bone graft substance itself. Q. In the lower back? A. I could give you a list of differential diagnoses about three miles long on why pain might occur in his lower back."[9]

---

[9] Notes of Testimony, page 32a.

The doctor then enumerated eight factors, including the injury to Lenart's left leg and the demineralization of the bone.

We view the evidence sufficient to justify the Board's determination that Lenart was entitled to total disability and was not limited to benefits for a specific loss.

Finally, Patterson asserts that the Board erred in finding total disability rather than partial disability. We find this assertion to be without merit and we need only consider in this regard the testimony of Patterson's witness, Dr. Parent, who was the attending physician and surgeon. The following question and answer are most pertinent: "Q. Now, at that time on 3-18-69, what would your professional opinion be as to whether he was or was not totally disabled for employment? A. He was disabled at the time I did see him on 3-18-69 and he had been from the time of initial admission to the hospital and his injury on 8-22-67."[10]

The record contains no evidence to the contrary; yet the petition to terminate alleges that Lenart, as of December 4, 1968, was able to return to work without a loss of earnings. The evidence does not support such an allegation, and the Board was correct in so determining.

After a careful review of the entire record, we are satisfied that Patterson failed to meet his burden of proof in this case. The Board's findings were not a result of a capricious disregard of competent evidence.

Accordingly, we enter the following

ORDER

AND NOW, June 8, 1973, the order of the Workmen's Compensation Appeal Board docketed November 8, 1972 is hereby affirmed.

---

[10] Notes of Testimony, page 12a.