St. Joe Minerals Corp., Petitioner *v.* Workmen's Compensation Appeal Board (Arthur D. Margetic, Jr.), Respondents.

Submitted on briefs September 16, 1982, before Judges BLATT, WILLIAMS, JR. and CRAIG, sitting as a panel of three.

*Bruce E. Woodske, Reed, Luce, Good, Tosh, Kunselman & McGregor,* for petitioner.

*Alexander J. Pentecost,* for respondent, Arthur D. Margetic, Jr.

OPINION BY JUDGE WILLIAMS, JR., March 31, 1983:

St. Joe Minerals Corporation (petitioner) appeals from an order of the Workmen's Compensation Appeal Board (Board) affirming the referee's decision to dismiss St. Joe's petition for termination of compensation.

On May 7, 1977, Arthur D. Margetic (claimant) sustained a right inguinal hernia, while in the course of his employment with the petitioner. Subsequent to this injury the claimant worked until June 18, 1977. On June 20, 1977, the claimant was admitted to the Medical Center of Beaver County under the care of Dr. John H. Shugert. On the next day the doctor performed surgery to repair the claimant's right inguinal hernia. The parties entered into an agreement for compensation on July 8, 1977, wherein it was indicated that the claimant was to receive $167.15 a week, effective June 18, 1977. This agreement was filed on July 18, 1977.

Although the claimant continued to experience pain and discomfort in the area of the incision, Dr. Shugert released the claimant to return to work on August 9, 1977. Notwithstanding the claimant's continuing pain, the parties executed a final receipt on August 19, 1977, wherein it was indicated that the claimant

was able to return to work on August 9, 1977, without loss of earning power.

On September 2, 1977, the parties entered into a supplemental agreement and therein stipulated that the claimant was unable to work due to recurring injury from the accident on May 7, 1977. On September 26, 1977, the claimant was readmitted to the Medical Center of Beaver County by Dr. Shugert. Dr. Shugert testified that exploratory surgery was performed on September 27, 1977, and that the pain of which the claimant complained was relieved. The doctor further testified that the claimant was discharged from the medical center under his care on October 1, 1977. Thereafter, on November 14, 1977, Dr. Shugert released the claimant from his care to return to work.

On several occasions after November 14, 1977, the claimant continued to complain of pain in the area of the incision. The claimant testified that almost immediately after he returned to work he continued to have pain while attempting to fulfill his work responsibilities. Dr. Shugert testified that after examining the claimant on November 17, 1977, he suggested to the employer that the claimant be transferred to a lighter job. In spite of this suggestion the employer had the claimant execute another final receipt on November 25, 1977, wherein it was stated that the claimant was able to return to work on November 18, 1977. But, on December 9, 1977, the parties entered into another supplemental agreement wherein the parties agreed that the claimant was unable to work due to recurring injury from the accident of May 7, 1977. Pursuant to this supplemental agreement the claimant was to receive $167.15 indefinitely, as of November 21, 1977.

On December 23, 1977, Dr. Shugert examined the claimant, and suggested injections of nesacaine or

lidocaine to relieve the pain. The claimant declined these suggested injections. On February 3, 1978, the last date on which the claimant was examined by Dr. Shugert, the doctor discharged the claimant from his care and issued an affidavit which stated that, as of February 3, 1978, the claimant had fully recovered from his May 7, 1977 injury, and was able to resume, without limitations, his former work responsibilities. On February 17, 1978, the employer engaged the claimant in yet another supplemental agreement whereby the claimant's compensation benefits were suspended, as of February 15, 1978. However, on February 21, 1978, the employer filed a petition for termination with Dr. Shugert's affidavit appended, thereby achieving the automatic suspension of claimant's benefits by the appropriate procedural device under Section 413 of The Pennsylvania Workmen's Compensation Act (Act).[1]

During a hearing held before the referee on July 17, 1979, there was lengthy discussion about what transpired between February, 1978, and July 10, 1978. The record reveals that the claimant worked only sporadically during that period due to his incessant pain in the area of the incision, and that he ultimately stopped working in July, 1978. It was adduced at the July 17, 1979 hearing that on July 10, 1978, and August 9, 1978, the claimant had been examined by Dr. Stanley A. Hirsch, who made a diagnosis of entrapment of the right ileo-inguinal nerve. The doctor confirmed his diagnosis by administering nerve blocks to the area surrounding the incision and evaluating their effectiveness in relieving the claimant's pain. It was this doctor's opinion that the nerve entrapment was secondary to the hernia repair and that the

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §774.

nerve entrapment could be disabling with physical activity. The claimant did not engage Dr. Hirsch after August 9, 1978. The claimant testified that Dr. Hirsch recommended further treatment if the pain persisted, but that he did not feel emotionally stable enough to return after August 9, 1978. The claimant also stated that although he did not feel up to an operation then, he believed that when he felt emotionally stable enough to undergo an operation he would return to Dr. Hirsch.

Nearly a year after his last visit with Dr. Hirsch, the claimant was examined by two psychiatrists; one on behalf of the petitioner, and Dr. Joseph Weigel, on behalf of the claimant. Dr. Weigel examined the claimant on June 12, 1979, and June 26, 1979, and opined that the claimant was totally disabled due to a conversion neurosis which developed as a result of the surgery and persistent pain. Dr. Weigel's opinion concerning the date the claimant's psychiatric disability began was confined to the date he first saw him, June 21, 1979.

After numerous hearings, and on the basis of the complete record, including depositions, testimony, and exhibits submitted by the parties, the referee decided that the petitioner failed to meet its burden of proving that the claimant's disability had terminated and that he was able to return to his former employment without limitations. The referee found that the claimant, as a result of his May 7, 1977 injury and the surgeries associated therewith, suffered a conversion neurosis which renders him totally disabled from performing his former occupation or any similar occupation. Additionally, the referee found that absent a showing of work availability within the claimant's educational, vocational, physical, and psychological limitations the claimant was presumed totally disabled

and entitled to compensation benefits. Accordingly, the referee dismissed the petition for termination of compensation, and directed that compensation to the claimant be reinstated retroactive to July 17, 1978, continuing into the future. Also ordered payable, pursuant to Section 440 of the Act, 77 P.S. §996,[2] were the reasonable costs incurred in litigation for reimbursing witnesses the value of lost time to attend proceedings, necessary medical examinations, and stenographic costs to reproduce depositions presented at referee's hearings. The petitioner appealed the referee's decision to the Board, which affirmed the referee's decision without making additional findings of fact. The instant appeal to this Court followed, and we affirm.

To prevail on a petition for termination of compensation the petitioner must meet its burden of proving that the claimant's disability has terminated. *Certainteed Corp. v. Workmen's Compensation Appeal Board,* 57 Pa. Commonwealth Ct. 646, 426 A.2d 1282 (1981). Furthermore, where the decision of the Board is against the party having the burden of proof, the question on appellate review is whether the findings of the Board are consistent with each other and with its conclusions of law and its order and can be sustained without a capricious disregard of competent evidence. *Folmer Ice Cream Co. v. Workmen's Compensation Appeal Board,* 17 Pa. Commonwealth Ct. 34, 330 A.2d 584 (1975).

The petitioner asserts in this appeal that the claimant is not entitled to benefits because he refused to accept reasonable medical services which would have resulted in a termination of the claimant's disability

---

[2] Section 440 of the Workmen's Compensation Act was added by Section 3 of the Act of February 8, 1972, P.L. 25.

by October 1, 1978.[3] Specifically, the petitioner contends that the claimant's psychological disability would have been prevented had he undergone further surgical treatment when it was recommended. In support of its argument the petitioner directs our attention to the second deposition of Dr. Hirsch. On the basis of that deposition the petitioner contends that Dr. Hirsch recommended surgical treatment for the claimant; a fact undisputed by the claimant. However, according to the petitioner, the claimant refused to follow Dr. Hirsch's recommendation. The petitioner further contends that the referee capriciously disregarded the competent testimony of Dr. Hirsch on this issue without making a finding of fact to explain why. Thus, the petitioner prays that this Court remand the case to the referee so that findings of fact relative to the issue of failure to accept reasonable medical services can be made.

After a careful review of the referee's decision, we discover that the referee *did* make a finding of fact that the claimant refused to submit to the surgery described by Dr. Hirsch. A finding of fact that the claimant refused reasonable medical treatment

---

[3] On November 14, 1979, the eleventh hearing scheduled for the resolution of this matter, and after taking the deposition of Dr. Hirsch, the petitioner requested that the referee also consider the issue whether the claimant had refused reasonable medical treatment. This request was unobjected to by claimant, and the petitioner was permitted to submit the deposition of Dr. Hirsch. In part here pertinent, Section 306(f) of the Act, 77 P.S. §531(4), provides that:

If the employee shall refuse reasonable services of duly licensed practitioners of the healing arts, surgical, medical and hospital services, treatment, medicines and supplies, he shall forfeit all rights to compensation for any injury or any increase in his incapacity shown to have resulted from such refusal.

would be inconsistent with an order granting compensation benefits. Yet, in affirming the referee's decision, the Board disregarded the referee's finding that the claimant refused the surgery described by Dr. Hirsch in his second deposition taken by the employer.

Dr. Hirsch stated for the record that at the claimant's last visit he administered another nerve block and advised the claimant to relate to him any other difficulties and pain if such persisted. Although it was not recorded, the doctor recollected that the claimant telephoned him after August 9, 1978, to inform the doctor of his continuing pain.[4] In his deposition taken by the claimant on October 27, 1978, Dr. Hirsch stated that he did not have any future appointments scheduled with the claimant. Dr. Hirsch stated that a specific appointment was not made because the doctor was only seeing the claimant for consultation, and that an operation could be performed by the surgeon of the claimant's choice.

Although the claimant did not return to Dr. Hirsch after August 9, 1978, this failure to return does not amount to a refusal of medical treatment. *Patterson v. Lenart,* 9 Pa. Commonwealth Ct. 116, 305 A.2d 778 (1973). The claimant stated that he would engage Dr. Hirsch when he felt ready. During the hearing on July 17, 1979, the claimant testified that due to the surgeries and subsequent lidocaine injections he suffered severe nerve problems. He further stated that he had become hesitant about undergoing further surgery, adding that, ". . . when I get ready to go, it will be Dr. Hirsch."

It has not been shown that the claimant did not intend to return to the doctor relative to having the operation. In fact, there is a clear expression to the

---

[4] Notes of testimony of First Deposition of Dr. Hirsch taken by claimant, page 12.

contrary. The claimant was then undertaking therapy for his mental condition. The referee found that the claimant had developed psychological problems and consulted the Family Services of Beaver County for therapy. Patrick M. Brennan, a marital and family therapist for Beaver County, saw the claimant for consultation; initially on September 21, 1978, and thereafter on a weekly basis. It is clear that the claimant was attempting to rid himself of his resultant psychological problems before undergoing further treatment; he was not refusing any treatment. Furthermore, we must consider the evidence in a light most favorable to the party prevailing before the workmen's compensation authorities. *House Moving and Industrial Rigging, Inc. v. Workmen's Compensation Appeal Board,* 38 Pa. Commonwealth Ct. 21, 391 A.2d 1105 (1978). We opine that it would be unreasonable to infer that this claimant refused further medical treatment because he did not immediately pursue a recommendation. The record does not support the contention that he refused further medical treatment.

In disregarding the referee's finding of fact the Board did not violate its scope of review where the finding of fact was completely at odds with the record. *Holy Spirit Hospital v. Workmen's Compensation Appeal Board,* 46 Pa. Commonwealth Ct. 372, 406 A.2d 583 (1979). The referee's finding of fact and the claimant refused medical treatment was properly disregarded by the Board. The Board thereby harmonized its order with the record evidence.

Accordingly, we affirm the decision of the Board.

ORDER

AND Now, the 31st day of March, 1983, the order of the Workmen's Compensation Appeal Board dated December 18, 1980 at Docket No. A-79466 is affirmed.