James Byrd, Petitioner *v.* Workmen's Compensation Appeal Board (Temco Services Industries et al.), Respondents.

Submitted on briefs December 7, 1983, to Judges CRAIG, DOYLE and BLATT, sitting as a panel of three.

*Robert J. Murphy, Murphy, Murphy & Murphy,* P.C., for petitioner.

*Joseph S. Bekelja, Margolis, Edelstein, Scherlis, Sarowitz and Kraemer,* for respondent, Temco Services Industries et al.

Opinion by Judge Doyle, April 4, 1984:

Before this Court is an appeal by James Byrd (Claimant) from a decision of the Workmen's Compensation Appeal Board (Board) affirming a referee's granting of Temco Services Industries' (Employer) petition to terminate benefits.[1]

Claimant fell and injured his knee while in the course of his employment on February 18, 1977. Pursuant to a notice of compensation payable, he was granted workmen's compensation benefits of $106.27 per week. While being treated for his knee injury, Claimant continued to limp and complain of pain. Thus, in July of 1977 he was referred to Dr. Martin Beller to undergo a series of diagnostic procedures including x-rays and an arthogram. Dr. Beller diagnosed Claimant's problem as a strain of the knee and prescribed a thereapy program which consisted of quadriceps strengthening exercises, whirlpool treatment, heat and massage. Employer's insurance carrier agreed to the therapy program and it was implemented under the auspices of Dr. Beller on July 21, 1977. The program was curtailed, however, when Claimant cancelled eight of the twelve sessions scheduled through August 16, 1977. On September 29, 1977, Employer filed the petition which is the subject of the instant appeal, asserting that Claimant, by not cooperating in the prescribed therapy program, had effectively refused treatment and had accordingly forfeited his right to compensation under Section 306(f) of The Pennsylvania Workmen's Compensation Act (Act).[2] Shortly thereafter, on October 22, 1977, Claimant's knee "buckled" while he was walking and he fractured

---

[1] While the technical filing was a petition to terminate benefits, the referee concluded that it should be addressed as a petition for forfeiture.

[2] Act of June 2, 1915, P.L. 736, as amended, 77 P.S. §531(4).

his kneecap. Claimant ascribed this incident, and his resulting further disability, to a basic weakness of his knee stemming from his work-related injury of February, 1977. Employer denied this in conjunction with proceedings emanating from its termination petition by asserting that, but for Claimant's refusal of treatment for his original injury, he would have fully recovered before the October 22nd incident. At hearings on the termination petition held before a referee, testimony was presented by Claimant, Dr. Beller, an adjustor for Employer's insurance carrier who dealt with Claimant's case and the physician who treated Claimant after his fractured kneecap. Subsequent to the hearings, the referee found as fact that Claimant had missed eight of the scheduled therapy sessions, had no legitimate reason for so doing, and would have recovered had he followed the prescribed course of therapy. The referee therefore concluded that Claimant had refused treatment and thus had forfeited his right to benefits from August 15, 1977, on.[3] On appeal of the referee's decision, the Board remanded for a specific finding as to the actual extent to which Claimant's refusal of treatment had affected the disability resulting from his knee injury. *See Matje v. City of Philadelphia, Police Department,* 11 Pa. Commonwealth Ct. 99, 312 A.2d 470 (1973). The referee made a finding that 100% of Claimant's continuing disability was attributable to his lack of treatment. In this light, the Board affirmed the suspension of benefits and the appeal to this Court followed.

Section 306(f) of the Act reads, in pertinent part: If the employe shall refuse reasonable services of duly licensed practitioners of the healing arts, surgical, medical and hospital services,

---

[3] August 15, 1977, is the date of the last therapy session canceled by Claimant. A session scheduled for August 16, 1977, was attended.

treatment, medicines and supplies, he shall forfeit all rights to compensation for any injury or any increase in his incapacity shown to have resulted from such refusal.

An employer who, pursuant to Section 306(f) of the Act, seeks a forfeiture of benefits being paid under a compensation agreement bears the burden of establishing that the claimant is no longer entitled to benefits. *Folmer Ice Cream Co. v. Workmen's Compensation Appeal Board,* 17 Pa. Commonwealth Ct. 34, 330 A.2d 584 (1975). Where, as here, the decision on appeal is in favor of the party having the burden of proof, this Court's scope of review is limited to determining whether constitutional rights were violated, an error of law committed or whether the referee's essential findings are supported by substantial evidence. *Huff v. Workmen's Compensation Appeal Board (Ingalls Steel),* 70 Pa. Commonwealth Ct. 646, 453 A.2d 753 (1982).

In his appeal to this Court, Claimant contends that the decision to suspend his benefits was in error as a matter of law and not supported by substantial evidence. After a careful review of the record, we are constrained to disagree. It is now undisputed that Claimant canceled eight of the twelve scheduled therapy sessions, after which Dr. Beller refused to schedule further treatment. Claimant initially asserts that this alone does not establish that treatment was refused but rather "is consistent with a failure to appear resulting from personal neglect and other problems associated with [C]laimant's drug addiction." *See Patterson v. Workmen's Compensation Appeal Board,* 9 Pa. Commonwealth Ct. 116, 305 A.2d 778 (1973). Little in the record before this Court, however, would support a finding that Claimant's actions were mere neglect and the referee addressed the issue with a specific finding that neglect was not estab-

lished. Moreover, in *Patterson,* the claimant was actively undergoing treatment and was simply dilatory in his pursuit of the medical treatment with contrary medical evidence of record that this did not increase his disability or detrimentally impact on his condition. Here, Claimant was not fully participating in the prescribed treatment and the medical evidence makes it clear that his conduct adversely affected his rehabilitation. He therefore effectively refused the proffered medical services.[4]

Claimant also argues that the record fails to establish any increase in his disability brought about by his alleged refusal. In so arguing he states "[i]t is not sufficient that the refusal of treatment results simply in a continuation of the same disability, but this provision [Section 306(f) of the Act] requires that the disability be shown to increase." We decline to construe Section 306(f) in that manner. Common sense makes clear that any Claimant who refuses medical treatment which would have alleviated all or a portion of his disabling condition has effectively increased his disability by a percentage corresponding to the degree of relief the medical evidence establishes that he would have received. Thus, in line with the rule of law that a claimant who refuses treatment forfeits compensation proportionate to the incapacity or disability which results from the refusal, *Hanyok v. Pennsylvania Coal & Coke Corp.,* 155 Pa. Superior Ct. 194, 38 A.2d 537 (1944), we must examine the medical

---

[4] Claimant raises the ancillary argument that Dr. Beller refused to schedule further sessions after August 16, 1977, and that this was tantamount to a withholding of treatment which negates his poor attendance at the scheduled sessions. In light of Claimant's record of cancellations, however, Dr. Beller's actions were not unreasonable. Moreover, Claimant has failed to allege any effort to find a substitute for Dr. Beller or that he even discussed the matter with the adjustor for Employer's insurance carrier assigned to his case.

evidence in the case at bar to ensure that it supports the referee's finding that 100% of Claimant's continuing disability resulted from his refusal of the therapy treatments. Pertinent in this regard is the testimony of Dr. Beller. In response to inquiries concerning the benefits which would have accrued to Claimant had he undergone the full course of prescribed therapy, and the detriments of his failure to do so, Dr. Beller stated that the treatment was

> [t]o relieve pain, get rid of the limp and retrain the quadriceps muscle to avoid limp and *instability* of the right knee. (Emphasis added.)

And,

> [t]he failure to have treatment would deprive him of the benefit of such treatment. Therefore, the condition would not be ameliorated and improved because he did not receive the recommended treatment.

Finally, Dr. Beller stated, with a reasonable degree of medical certainty,[5] that

> [t]he effect of the lack of treatment would be to leave his [claimant's] knee in the same condition that I found it, namely, a source of complaint. . . .

Apparently inferring from the testimony that Claimant would have no longer experienced instability in his knee or found it to be a source of complaint had he engaged in the therapy program, the referee attached the 100% figure to the amount of Claimant's continuing disability resulting from his refusal of treatment and specifically found that Claimant would not later have experienced the buckling of his knee which resulted in its fracture and additional disability. The

---

[5] *See Philadelphia College of Osteopathic Medicine v. Workmen's Compensation Appeal Board (Lucas)*, 77 Pa. Commonwealth Ct. 202, 465 A.2d 132 (1983).

evidence supports the inference and we affirm the decision that Claimant has forfeited his entitlement to benefits as of August 15, 1977.

ORDER

Now, April 4, 1984, the decision and order of the Workmen's Compensation Appeal Board, in the above captioned matter, A-81680, is hereby affirmed.