116 Pa. Commonwealth Ct. 401 (1988)
541 A.2d 1176
Mackintosh-Hemphill, Division of G. & W. Manufacturing Company, Petitioner
v.
Workmen's Compensation Appeal Board (Banicki), Respondents.
No. 3578 C.D. 1986.
Commonwealth Court of Pennsylvania.
Submitted on briefs March 7, 1988.
May 26, 1988.
*402 Submitted on briefs March 7, 1988, to Judges CRAIG and PALLADINO, and Senior Judge BARBIERI, sitting as a panel of three.
David Max Baer, Campbell, Sherrard & Burke, P.C., for appellant.
J. Scott Leckie, Yablonski, Costello & Leckie, for appellee.
OPINION BY JUDGE PALLADINO, May 26, 1988:
Mackintosh-Hemphill Division of G. & W. Manufacturing Company (Employer) appeals an order of the Workmen's Compensation Appeal Board (Board) affirming a referee's decision to reinstate benefits to John J. Banicki (Claimant). For the reasons set forth below, we affirm.
Claimant was employed by Employer as a molder's helper. On October 16, 1981, Claimant suffered a work injury when he fell into a pit and sustained a concussion. Claimant returned to light duty work after the accident and eventually returned to his regular job on April 26, 1982.[1] Claimant remained at this job until *403 December 10, 1982 when he was laid off for economic reasons.
As a result of Claimant's injury, Claimant came under the care of Dr. Thomas Dugan, a neurologist. Dr. Dugan subsequently referred Claimant to Dr. James Huha, a clinical psychologist. Dr. Huha diagnosed Claimant as suffering from a post-traumatic head injury with accompanying depression and anxiety and recommended to Employer that Claimant undergo psychotherapy. Employer then authorized six (6) months of psychotherapy and agreed to pay for these treatments. Claimant commenced psychotherapy on May 3, 1982 and continued with treatment until October 25, 1982.[2]
On November 3, 1982, Dr. Huha performed a neuropsychological re-evaluation and recommended continued therapy. Dr. Huha sent a written report, dated November 29, 1982, to Employer regarding the results of the re-evaluation and recommendation for continued therapy. After Dr. Huha performed the re-evaluation, Claimant went to one therapy session on December 27, 1982 and advised Dr. Huha that he could not continue treatment while he was unemployed because he could not afford the travel expense to Dr. Huha's office.[3] Claimant requested that Dr. Huha recommend a psychotherapist closer to Claimant's home. Claimant did *404 not return to Dr. Huha and did not see a psychotherapist again until March 8, 1983, at which time he consulted Dr. Nissim Benado, a psychiatrist.[4]
Employer requested Claimant to return to work in June of 1983, but Claimant did not do so. On June 13, 1983, Claimant filed a petition to reinstate benefits, alleging that he had become totally disabled as of March 8, 1983. Employer contested Claimant's petition and asserted that Claimant was not entitled to benefits because Claimant had refused medical treatment.[5]
After several hearings, the referee determined that Claimant's disability was not the result of his refusal to submit to treatment by a duly licensed practitioner of the healing arts. The referee concluded that treatment was not available to Claimant for reasons beyond Claimant's control. Without taking additional evidence, the Board affirmed the decision of the referee.
On appeal to this court, Employer argues that the referee erred in concluding that Claimant's disability was not caused by a refusal to submit to treatment. Employer argues that the referee should have distinguished between Claimant's ability to attend therapy sessions with Dr. Huha and Claimant's ability to organize *405 a search for a new doctor. Employer further contends that the referee should have distinguished between Claimant's failure to attend therapy from November 3, 1982 to December 10, 1982 (before Claimant was laid off) and Claimant's failure to attend therapy after December 10, 1982.[6]
Our scope of review is limited to a determination of whether constitutional rights were violated, an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. Bailey v. Workmen's Compensation Appeal Board (Lawton Feed & Supply, Inc.), 105 Pa. Commonwealth Ct. 106, 523 A.2d 415 (1987).
Section 306(f) of The Pennsylvania Workmen's Compensation Act[7] provides that "if the employee shall refuse reasonable services of duly licensed practitioners of the healing arts, surgical, medical and hospital services, treatment . . . he shall forfeit all rights to compensation for any injury or increase in his incapacity shown to have resulted from such refusal." An employer who seeks a forfeiture of benefits pursuant to Section 306(f) bears the burden of establishing that the employee is no longer entitled to benefits. Byrd v. Workmen's Compensation Appeal Board (Temco Services Industries), 81 Pa. Commonwealth Ct. 325, 473 A.2d 723 (1984).
In this case, Employer presented the deposition testimony of Dr. Huha who indicated that Claimant had cancelled an appointment scheduled for December 14, 1982 and that he [Dr. Huha] had warned Claimant of *406 the consequences of discontinuing therapy.[8] Dr. Huha also testified that he urged Claimant to continue treatment and advised Claimant to consult a doctor closer to home if he could not return to Dr. Huha's office for treatment.[9] Finally, Dr. Huha testified that no one ever told him that he could not continue to treat Claimant.[10] Employer also presented the testimony of Mr. David Kapsha, Employer's Industrial Relations Manager, who indicated that Employer would pay for continued treatment (after the November 3, 1982 reevaluation) and that this information was communicated to Claimant.[11]
Claimant testified that the reasons he discontinued therapy were his financial difficulties, his wife's illness, and his inability to become organized as a result of his depression.[12] Claimant also presented the testimony of his wife, Shirley Banicki, who stated that she attempted to find a new therapist for Claimant, but was delayed in *407 doing so because of her own illness.[13] Claimant's wife also indicated that Claimant was suffering organizational and memory problems which prevented him from locating a new doctor.[14]
Based upon the above testimony, the referee in this case found that the record was devoid of unequivocal evidence or testimony to establish when Employer authorized additional psychotherapy. Finding of Fact No. 23. The referee further found that there was no indication in the record that Claimant was advised by Dr. Huha to receive therapy between November 3, 1982 and December 10, 1982. Finding of Fact No. 24.[15] The referee determined that although Claimant requested Dr. Huha and Mr. Kapsha to refer him to a psychiatrist closer to home and that Dr. Huha and Mr. Kapsha were in a better position than Claimant to arrange for alternative treatment by another psychiatrist, no action was taken on Claimant's request. Findings of Fact Nos. 30-31. Finally, the referee noted that since March 8, 1983, Claimant has been treated by Dr. Benado and has adhered faithfully to the regimen of treatment prescribed. Finding of Fact No. 30(h).
The referee determined that a distinction should be drawn between an injured employee's refusal to submit *408 to treatment and an inability to submit to treatment. Finding of Fact No. 29. Concluding that Claimant had not refused medical services but was unable to submit to treatment for reasons beyond his control, the referee determined that Claimant suffered a recurrence of his work injury as of March 8, 1983 and was therefore entitled to benefits.
Employer contends that the facts of this case are analogous to those presented in Byrd. We disagree. In Byrd, this court determined that an employee had forfeited his entitlement to benefits because he effectively refused medical treatment when he cancelled eight of twelve physical therapy appointments. The employer's insurance carrier in Byrd had specifically authorized these appointments.
In the case at bar, the referee determined that Employer had not presented unequivocal evidence to establish that it authorized continued treatment. We note that questions of credibility and evidentiary weight are to be resolved by the referee as fact-finder. Smith v. Workmen's Compensation Appeal Board (Westinghouse Electric Corp.), 90 Pa. Commonwealth Ct. 246, 494 A.2d 877 (1985). Further, in performing his role as factfinder, the referee is free to accept or reject the testimony of any witness, in whole or in part. Stratton v. Workmen's Compensation Appeal Board (Babcock & Wilcox), 93 Pa. Commonwealth Ct. 454, 501 A.2d 709 (1985). Further, unlike the employee in Byrd, Claimant attempted to, and ultimately did, locate another psychiatrist.
Based upon the findings of fact made by the referee, which are supported by substantial evidence, we cannot conclude that the actions of Claimant were so unreasonable as to constitute a refusal to submit to treatment by a duly licensed practitioner of the healing arts. See St. Joe Minerals Corp. v. Workmen's Compensation Appeal *409 Board (Margetic), 73 Pa. Commonwealth Ct. 189, 458 A.2d 295 (1983); Patterson v. Lenart, 9 Pa. Commonwealth Ct. 116, 305 A.2d 778 (1973).
Accordingly, we affirm.

ORDER
AND NOW, May 26, 1988, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is affirmed.
NOTES
[1] Claimant received benefits for his injury pursuant to a Notice of Compensation Payable issued by Employer. Benefits were suspended when Claimant returned to his regular job without loss of wages.
[2] Dr. Huha sent Employer regular reports detailing Claimant's progress during the course of his treatment. Dr. Huha's reports indicated that during the October 4, 1982 session, Claimant began expressing concerns about his finances. Dr. Huha's report concerning the October 25, 1982 session included a recommendation that a second neuropsychological evaluation be performed to establish to what degree Claimant's memory impairment and selective attention problems still existed. See Exhibit 10 of Record.
[3] The referee found that the distance from Claimant's home to Dr. Huha's office was approximately thirty-five (35) to forty (40) miles. Finding of Fact No. 30.
[4] Dr. Benado diagnosed Claimant as suffering from: chronic brain syndrome associated with head injury, severe, post-traumatic in origin; depression, severe, with suicidal urges and suicidal attempts, post-traumatic in origin; and anxiety neurosis, severe, post-traumatic in origin. Deposition of Dr. Benado at 9.
[5] We note that a claimant seeking reinstatement of benefits, which have been suspended, has the burden of showing only that he remains disabled. See Westmoreland County Institution District v. Workmen's Compensation Appeal Board (Jacobs), 106 Pa. Commonwealth Ct. 395, 526 A.2d 472 (1987). However, in this case, Employer does not dispute that Claimant's work injury necessitated the psychotherapy. Employer further does not dispute that Claimant is now totally disabled. The sole issue raised by Employer is whether Claimant refused medical treatment.
[6] Employer argues that because Claimant was working full time prior to December 10, 1982, Claimant's financial condition was not an actual factor in his failure to attend therapy between November 3, 1982 and December 10, 1982.
[7] Act of June 2, 1915, P.L. 736, as amended, 77 P.S. §531(4).
[8] Deposition of Dr. Huha at 29.
[9] Deposition of Dr. Huha at 30, 32. Dr. Huha testified further that he was not familiar with therapists near Claimant's residence and that he advised Claimant to consult his [Claimant's] attorney for information. Deposition at 30-31.
[10] Deposition of Dr. Huha at 52. Dr. Huha also sent a written report to Employer's counsel, dated April 5, 1984, stating that at no time did Employer indicate that it was considering withdrawal of payment for treatment nor did Employer impose any dollar limit on the amount that it would ultimately pay for treatment.
[11] Notes of Testimony of Kapsha at 6-7. Mr. Kapsha also testified that he told Claimant that if Claimant wanted to find a doctor closer to home, Employer would agree to treatment in that manner. N.T. of Kapsha at 6.
[12] Notes of Testimony of Claimant at 12 (Hearing of July 13, 1983), N.T. of Claimant at 7 (Hearing of July 20, 1984). The deposition testimony of Dr. Huha confirmed that Claimant discontinued therapy for these reasons. Deposition of Dr. Huha at 30.
[13] Notes of Testimony of Shirley Banicki at 9-10. Mrs. Banicki testified that she was hospitalized for portions of December, 1982 and January, 1983.
[14] Notes of Testimony of Shirley Banicki at 9, 10, 15, 21. Mrs. Banicki also stated that when she contacted Dr. Benado, the earliest appointment she could obtain for Claimant was on March 8, 1983.
[15] On cross-examination, Dr. Huha indicated that he could not remember what he told Claimant with respect to when another appointment would be scheduled (after he performed the reevaluation on November 3, 1982). Deposition of Dr. Huha at 74. As noted above, Dr. Huha's written report to Employer concerning the re-evaluation was dated November 29, 1982.