602 A.2d 467

**J & L STEEL CORPORATION, c/o LTV
Steel Corporation, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL
BOARD (SHUTAK), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted Oct. 18, 1991.

Decided Jan. 16, 1992.

Petition for Allowance of Appeal Denied June 1, 1992.

Raymond F. Keisling, for petitioner.

Anthony J. Kovach, for respondent.

Before CRAIG, President Judge, PALLADINO, J., and BARRY, Senior Judge.

CRAIG, President Judge.

J & L Steel Corporation appeals from a decision of the Workmen's Compensation Appeal Board granting to John Shutak, the claimant, his petition for modification of compensation benefits pursuant to § 413 of The Pennsylvania Workmen's Compensation Act.[1] The board increased the claimant's compensation award from partial compensation to total disability compensation. We affirm.

The issues in this case are whether the claimant met his burden of proving (1) that his disability increased from partial to total and (2) that he is entitled to total disability benefits even though he is retired and not seeking employment.

The facts in this case, as found by a referee, are as follows. J & L employed the claimant in the coal mining industry from February 9, 1929 through August 31, 1978. During the claimant's employment, he was exposed to varying degrees of coal dust. On August 11, 1980, a referee

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 772.

awarded the claimant partial disability benefits because the claimant contracted coal worker's pneumoconiosis. On November 19, 1988, the claimant sent to the board a petition for modification, seeking to increase his partial disability payments to total disability payments.

Based upon the following significant findings of fact, the referee granted the claimant's petition for modification and awarded total disability payments to him:

7. The claimant in the prosecution of his Petition for Modification submitted into evidence the medical report of Dr. J.D. Silverman dated November 3, 1988 and his deposition taken May 26, 1989. Dr. Silverman opined that the claimant was totally and permanently disabled from coal worker's pneumoconiosis. In order to refute the claimant's cause of action the defendant submitted into evidence the medical report of Dr. Joseph J. Renn dated February 10, 1989, of his examination of the claimant on February 9, 1989 and his deposition taken September 29, 1989. Dr. Renn opined that the claimant had no x-ray evidence of coal worker's pneumoconiosis and found no disability therefrom. Your Referee finds the evidence submitted into evidence on behalf of the claimant to be more competent and credible in this matter and finds as a fact that the claimant became totally disabled due to coal worker's pneumoconiosis on November 17, 1988.

8. Claimant on November 17, 1988, became totally and permanently disabled from performing his former occupation as a coal miner due to an occupational disease (coal worker's pneumoconiosis) which resulted from his total and cumulative exposure to coal dust during all of his employment in the coal mining industry.

. . . .

11. The claimant's disability occurred within three hundred weeks after the last date of employment in an industry to which he was exposed to the hazards of such disease.

The employer appealed to the board, which affirmed the referee's decision, stating that the claimant met his burden

of proving that his partial disability increased to a total disability. The employer now appeals to this court,[2] seeking to overturn the board's decision. The employer raises two issues: (1) whether the claimant met the burden of proving that his condition deteriorated to the point of total disability and (2) whether the referee and board erred in awarding to the claimant total disability payments even though the claimant had retired in 1978.

### 1. Whether Claimant Met His Burden of Proving Total Disability.

■ A party seeking to modify an award or agreement for compensation must produce competent evidence of a change in the worker's physical condition occurring since the date of the award or agreement. *Airco–Speer Electronics v. Workmen's Compensation Appeal Board*, 17 Pa.Commonwealth Ct. 539, 333 A.2d 508 (1975). The party seeking modification has the burden of proof. *Cerny v. Schrader and Seyfried, Inc.*, 463 Pa. 20, 342 A.2d 384 (1975).

■ Specifically, employer argues that the claimant did not meet his burden because the claimant's medical evidence indicates his disability has not changed since the referee awarded partial disability benefits in 1980.

The claimant presented the testimony of Dr. Silverman, who stated:

Q. Could you render an opinion, within a reasonable degree of medical certainty, as to what this gentleman's condition presently is?

A. What his condition is?

Q. Yes.

A. From a practical point of view, I would consider him totally and permanently disabled in the sense he be [sic]

2. Our scope of review is limited to a determination of whether constitutional rights were violated, an error of law was committed or whether necessary findings of fact are supported by substantial evidence. *Mackintosh–Hemphill v. Workmen's Compensation Appeal Board (Banicki)*, 116 Pa.Commonwealth Ct. 401, 541 A.2d 1176 (1988).

unable to return to his prior job or any similar employment.

Q. What would the cause of that disability be, Doctor?

A. The cause of that was his anthracosilicosis.

Q. You had examined this gentleman on previous occasions; is that correct?

A. Yes.

Q. You had examined him on March 5, 1979; is that correct?

A. Well, actually it was February 28.

Q. You rendered a report dated March 5, 1979?

A. Yes.

Q. And what was your opinion of his condition as a result of your evaluation then, Doctor?

A. My opinion, that he's totally and permanently disabled from his anthracosilicosis in the sense he would be unable to return to his prior job in the mines, and that his anthracosilicosis had occurred as a result of his total and cumulative exposure in the mines.

Q. Does your opinion today still remain the same?

A. Yes.

Q. Now, Doctor, is anthracosilicosis a reversible disease process?

A. No.

Q. And is it known to be what is called a progressive disease process?

A. Can be, yes.

Q. What is a progressive disease process?

A. Means it can get worse.

Moreover, the claimant testified:

Q. How has your breathing problem been since you had retired from the coal industry, sir?

A. It's getting worse. It seems to me that if I walk any little distance—. I'm starting to breathe heavy now.

Q. Do you have a difficult time talking?

A. Yes. When I talk too much, I get out of breath.

Q. What type of physical activity are you able to do now?

A. Well, my doctor recommended me to go swimming, go dancing but slow, and walking, and that's what I try to do.

Q. Then, since you had received your initial decision, your problem has gotten worse?

A. Worse, yes. It seems like it's getting worse.

Thus, the claimant testified that his condition has worsened since the date of his retirement in 1978.

In *Mancini v. Workmen's Compensation Appeal Board*, 64 Pa.Commonwealth Ct. 484, 440 A.2d 1275 (1982), the claimant filed a petition to modify his compensation for partial disability to total disability. The claimant testified at the hearing before the referee that his pain from the work injury had increased since the date of a referee's award of compensation for partial disability. This court stated that the claimant's testimony constituted substantial competent evidence supporting the referee's finding that the claimant's disability had deteriorated since the date of the referee's award for partial disability.

Therefore, in this case, the referee's finding that the claimant's work-related injury has deteriorated since the date of his retirement is supported by substantial and competent evidence.

### 2. Whether Claimant's Voluntary Retirement Precludes Recovery of Total Disability Payments.

The employer also argues that the referee committed an error of law by not suspending benefits because the claimant retired in 1978 and removed himself from the labor market.

The employer cites *Dugan v. Workmen's Compensation Appeal Board (Fuller Co.)*, 131 Pa.Commonwealth Ct. 218, 569 A.2d 1038 (1990), for the proposition that because the

claimant voluntarily retired he cannot suffer a loss of earning power and therefore is not entitled to any benefits.

However, *Wheeling–Pittsburgh Steel Corp. v. Workmen's Compensation Appeal Board (Smith)*, 70 Pa.Commonwealth Ct. 100, 452 A.2d 611 (1982) is persuasive in this case. In *Wheeling*, the claimant voluntarily retired. Eleven months after his retirement, he filed a claim for compensation for an *occupational disease*. The employer argued that the claimant suffered no disability compensable under the Act because the claimant had voluntarily retired from his employment. This court, relying upon § 301 of the Act, 77 P.S. § 411(2), rejected the employer's argument, stating:

> [T]he exact time of [an occupational disease's] origin is necessarily obscure and their insidious progress is not revealed until, frequently after a long interval, the disability which they create manifests itself.... [I]t is precisely because such diseases frequently do not manifest themselves until after the employee has, for whatever reason, left the employment that our Legislature has allowed 300 weeks since the last exposure for the disease to be manifest.

*Wheeling*, 70 Pa.Commonwealth Ct. at 106, 452 A.2d at 614.

*Dugan* did not involve an occupational disease, and the claimant there also had excluded the possibility of future employment.

Because the claimant suffers from an occupational disease, coal worker's pneumoconiosis, which by definition progressively worsens, the claimant's voluntary retirement did not preclude an award for total disability benefits.

Accordingly, the decision of the board is affirmed.

## ORDER

NOW, January 16, 1992, the order of the Workmen's Compensation Appeal Board, No. A89–2954, dated April 25, 1991, is affirmed.