# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Wegmans Food Markets, Inc.,    :
                Petitioner    :
                                :
           v.                :  No. 687 C.D. 2024
                                :  Argued: December 9, 2024
Bonnie Cole (Workers' Compensation  :
Appeal Board),               :
                Respondent   :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                  HONORABLE CHRISTINE FIZZANO CANNON, Judge (P.)
                  HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
PRESIDENT JUDGE COHN JUBELIRER      FILED:  January 29, 2025

Wegmans Food Markets, Inc. (Employer) petitions for review of the May 15, 2024 Order of the Workers' Compensation Appeal Board (Board) that reversed the decision of a Workers' Compensation Judge (WCJ), which had granted Employer's Review and Suspension Petitions (Petitions) and suspended Bonnie Cole's (Claimant) wage loss benefits based on Claimant's refusal of reasonable medical services pursuant to Section 306(f.1)(8) of the Workers' Compensation Act (Act), 77 P.S. § 531(8).[1]  On appeal, Employer raises multiple issues, arguing that the Board erred by reversing the WCJ for a reason not raised by Claimant; the Board

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 531(8).  This section states:  "If the employe shall refuse reasonable services of health care providers, surgical, medical and hospital services, treatment, medicines and supplies, he shall forfeit all rights to compensation for any injury or increase in his incapacity shown to have resulted from such refusal."  *Id.*

infringed upon the WCJ's fact finding role; and Employer met its burden of proof under the established standard for obtaining a suspension of benefits under Section 306(f.1)(8), while the Board deviated from that standard in reversing the WCJ's Decision. Upon careful review, we discern no error or abuse of discretion in the Board's Order and, therefore, we affirm.

## I.    BACKGROUND

This Court previously set forth the relevant facts in its earlier decision denying Employer's request for supersedeas, as follows.

> Claimant sustained a work-related injury, which Employer accepted via a Notice of Compensation Payable (NCP), later amended, that described the injury as "a right open commuted ankle fracture slash dislocation involving the distal tibia as well as the proximal and distal fibular." (WCJ Decision, Finding of Fact (FOF) ¶ 4.) In October 2022, Claimant had to have her right leg below her knee amputated due to her developing osteomyelitis, a bone infection. (*Id.* ¶¶ 7c, 9d.) Employer subsequently filed the Petitions asserting that Claimant's wage loss benefits should be suspended pursuant to Section 306(f.1)(8) . . . because "Claimant refused reasonable medical treatment and advice, which if it had been followed would have reduced her disability and resulted in a reduction of medical treatment and lessened the chance that additional future treatment would be required." (FOF ¶ 1.) Employer presented the deposition testimony of its medical expert in support of its Petitions, and Claimant offered her own testimony and that of a medical expert.
>
> The reasonable recommended treatment refused, according to Employer, was the advice of numerous physicians to stop smoking and drinking alcohol, which Lucian Bednarz, M.D., Employer's expert, opined would have had a high probability of success in leading to the improvement of Claimant's condition or preventing its deterioration from the work-related injury. (*Id.* ¶ 5g-h.) Dr. Bednarz testified specifically about the connection between smoking and the type of bone infection that led to Claimant's amputation, and that Claimant's refusal to follow reasonable medical advice and stop smoking "caused, or substantially contributed to, the development of nonunion and

2

osteomyelitis in her injured extremity." (*Id.* ¶ 9c, d.)  Employer also presented video surveillance of Claimant, reflecting, among other actions, her smoking numerous times while she was surveilled. (*Id.* ¶¶ 6, 10a.)

Claimant testified about her unsuccessful attempts to quit smoking, agreed that she was supposed to quit smoking because smoking negatively affected her ability to heal, denied that her physicians told her that she could lose part of her leg if she continued smoking, and denied, initially, that her physicians offered her smoking cessation treatments but later acknowledged that her family physician had prescribed Bupropion. (*Id.* ¶ 7b-e; [Reproduced Record (R.R.) at 198a] . . . .)  Claimant's testimony regarding her use of those treatments was unclear, although she asserted that she had "cut back" her smoking. ([R.R. at 198a-200a, 203a-05a].)  At the time of the January 18, 2023 hearing, Claimant was still smoking, although less than at the time of the injury. (*Id.* at [196a].)  Scott Rosenthal, D.O., a pain management specialist, noted that his records showed that Claimant was, at one point, taking Wellbutrin[2] to quit smoking, Claimant had quit smoking by August 2022, and Claimant had never refused treatment and had curbed her "social habits" once advised to do so.  (FOF ¶ 8a, j.)  Dr. Rosenthal agreed that an extensive smoking history could impact a body's ability to heal but disagreed that Claimant's chronic infections were the result of her smoking. (*Id.* ¶ 8j.)  Dr. Rosenthal further agreed that Claimant had been counseled numerous times to quit smoking to assist the healing of her injury, such advice was reasonable, there is a known association between the inability of fractures to heal and the bone infection that eventually led to Claimant's amputation and smoking, and he was not an expert on that topic. (*Id.* ¶ 8k.)

> FN2  Bupropion is the generic name for Wellbutrin.  *See Bupropion Hydrochloride (Marketed As Wellbutrin, Zyban, and Generics) Information*, FDA, https://www.fda.gov/drugs/postmarket-drug-safety-infor mation-patients-and-providers/bupropion-hydrochloride-marketed-wellbutrin-zyban-and-generics-information (last visited [Nov. 23], 2024).

The WCJ credited Claimant's testimony regarding how the work injury occurred, but rejected as not credible her testimony that she had not been told to stop smoking or that smoking would have a negative impact on her healing and that her physicians did not offer her smoking cessation treatments.  (*Id.* ¶ 10a.)  The WCJ based his credibility

determination, in part, on a March 21, 2022 surveillance video, showing Claimant smoking on six separate occasions between 7:23 a.m. and 2:07 p.m., during which time she also attended physical therapy. (*Id.*) The WCJ noted that "[g]iven the rate of consumption during the foregoing interval . . . [the WCJ was] not particularly persuaded by Claimant's assertion as to her level of effort or success in smoking cessation." (*Id.*) As between the medical experts, the WCJ credited Dr. Bednarz's testimony over that of Dr. Rosenthal, providing objective reasons for doing so. (*Id.* ¶ 10b, c.)

Based on Dr. Bednarz's credited testimony, the WCJ found

> that the recommended smoking cessation would have had a high probability of success, i.e., preventing further problems and aided in healing; that smoking cessation is an essential part of the pre-surgical management and post-surgical rehabilitation and that this had been an ongoing recommendation by Claimant's treating providers; that removing toxic agents, such as tobacco, do not pose a risk, but rather improve the likelihood of more rapid healing; that the recommendation of smoking cessation was medically reasonable; that Claimant's continued smoking, in spite of the recommendations of treating providers to cease, substantially contributed to the development of the nonunion and osteomyelitis in the injured extremity; that there was a direct connection between Claimant's failure to cease smoking and drinking and the subsequent amputation of her lower limb; and that Claimant would be more functional now had she ceased smoking per the recommendations of her doctors.

(*Id.* ¶ 10b.) The WCJ also credited Dr. Bednarz's testimony that "[b]oth alcohol and tobacco cessation . . . improves surgical outcomes and the nature of the fracture was such that we see on a regular basis and typically heals without significant consequences[.]" (*Id.*) The WCJ concluded that, based on this credible medical testimony, Employer met its burden of proving its entitlement to the forfeiture of benefits under Section 306(f.1)(8), due to Claimant's refusal of reasonable medical treatment. (*Id.*, Conclusions of Law (COL) ¶¶ 2-3 (citing *Bereznicki v. Workers' Comp. Appeal Bd. (Eat 'N Park Hosp. Grp.)*, 989 A.2d 46 (Pa. Cmwlth. 2009); *Byrd v. Workmen's Comp. Appeal Bd. (Temco Servs. Indus.)*, 473 A.2d 723 (Pa. Cmwlth. 1984); *Folmer*

4

*Ice Cream Co. v. Workmen's Comp. Appeal Bd.*, 330 A.2d 584 (Pa. Cmwlth. 1975)).)

Claimant appealed, and the Board reversed. The Board reasoned that to succeed on its Petitions, Employer had to show that Claimant refused reasonable medical care, which "has been defined as care that would result in decreasing disability and would restore earning power to the [c]laimant." (Board Opinion (Op.) at 5 (citing *Muse v. Workmen's Comp. Appeal Bd. (W. Elec. Co.)*, 522 A.2d 533 (Pa. 1987)).) The Board explained that, in determining if medical care is reasonable, a "WCJ must consider 1) whether it is highly probable that the medical treatment will cure the [c]laimant's health problem; and 2) whether it is highly probable that the medical treatment will enhance [the c]laimant's prospects for gainful and fulfilling employment." (*Id.* (citing *Kneas v. Workmen's Comp. Appeal Bd. (Cross Country Clothes)*, 685 A.2d 248 (Pa. Cmwlth. 1996)).) The Board also indicated that "[f]or proposed medical treatment to be reasonable, it need not 'cure' a claimant's injury, but need only improve his or her situation." (*Id.* (citing *Mills v. Workmen's Comp. Appeal Bd. (Super City Mfg., Inc.)*, 588 A.2d 1350 (Pa. Cmwlth. 1991)).)

The Board found that the WCJ erred in granting the Petitions because Employer had to first demonstrate that the medical treatment or service was reasonable, i.e., that it had a high probability of success, and "[t]he WCJ focused on Claimant's unwillingness to use the smoking cessation prescription." (*Id.* at 9.) According to the Board, it was uncontroverted "that ceasing to smoke had a high probability of preventing exactly what occurred, the amputation of [Claimant's] leg," but that the issue was whether there was a "high probability of success of the treatment, i.e., the **smoking cessation prescription**" or "that smokers had a high probability of success in quitting smoking using the Wellbutrin prescription that Claimant was prescribed," and no findings were made in this regard. (*Id.* (emphasis in original).) Due to the lack of information about this treatment "and its probability of success in curing Claimant's smoking habit," the Board found it was "too untenable to suspend Claimant's workers' compensation benefits." (*Id.*) In other words, the Board held that to be entitled to the suspension of Claimant's benefits, Employer had to show that the prescribed smoking cessation treatment, rather than the advice to stop smoking itself, "would have a high probability of success in reducing [Claimant's] disability" and it did not do so. (*Id.* at 9-10.)

5

*Wegmans Food Mkts., Inc. v. Cole (Workers' Comp. Appeal Bd.)* (Pa. Cmwlth., No. 687 C.D. 2024, filed Oct. 11, 2024) (Cohn Jubelirer, P.J., single judge op.), slip op. at 1-6.

Employer has filed a petition for review in this Court, challenging the Board's reversal of the suspension of Claimant's benefits.[2] After denying Employer's request for supersedeas, the Court ordered that the matter be expedited and, after oral argument, this matter is now ready for disposition.

## II. DISCUSSION

Employer asserts multiple reasons why the Board erred in reversing the WCJ's determination. First, Employer maintains that the Board erred in considering an issue Claimant did not raise in her appeal and, therefore, waived. Second, Employer argues the Board usurped the WCJ's fact finding authority by substituting its own view of the facts and disregarding undisputed facts of record. Third, Employer contends it met its burden of proof under the settled standard for establishing a suspension under Section 306(f.1)(8), and the Board erred by deviating from that standard and creating a new one not supported by precedent. We address these claims in turn.

### A. Waiver

Employer first argues that the Board erred in reversing the WCJ's Decision on an issue that Claimant had not specifically included in her appeal thereby waiving it for appellate review. In essence, Employer contends that Claimant's appeal lacked "specifics" or "particulars" as to why the WCJ's factual findings or legal conclusions

___

[2] This Court's review "is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated." *Elberson v. Workers' Comp. Appeal Bd. (Elwyn, Inc.)*, 936 A.2d 1195, 1198 n.2 (Pa. Cmwlth. 2007).

were made in error, leaving one "to speculate over what, specifically, Claimant objected to" on appeal. (Employer's Brief (Br.) at 22-23.) Employer likens Claimant's appeal to the Board to the one filed in *Jonathan Sheppard Stables v. Workers' Compensation Appeal Board (Wyatt)*, 739 A.2d 1084 (Pa. Cmwlth. 1999), which this Court found insufficiently specific to preserve issues for review. (Employer's Br. at 22 n.1.)

Claimant does not directly address the waiver issue in her brief, a fact Employer points out in its reply brief.

Section 111.11(a) of the Board's regulations sets forth the content and form of an appeal to the Board, and subsection (a)(2) relevantly provides that such appeals must include

> [a] statement of the particular grounds upon which the appeal is based, including reference to the specific findings of fact which are challenged and the errors of the law which are alleged. General allegations which do not specifically bring to the attention of the Board the issues decided are insufficient.

34 Pa. Code § 111.11(a)(2). "In interpreting and applying this section, we have found that when a party fails to abide by the requirements of 34 Pa. Code § 111.11(a)(2) by raising an issue with the requisite specificity in the appeal documents before the Board, that party fails to preserve the issue under" that provision. *McGaffin v. Workers' Comp. Appeal Bd. (Manatron, Inc.)*, 903 A.2d 94, 101 (Pa. Cmwlth. 2006) (emphasis omitted). "[A]t minimum, the issue must be specifically identified in the appeal documents—'the mere filing of an appeal does not preserve issues which are not specifically raised' in the appeal documents before the Board." *Id.* (quoting *Fiorentino v. Workmen's Comp. Appeal Bd. (Concrete Indus., Inc.)*, 571 A.2d 554, 556 (Pa. Cmwlth. 1990)).

7

Upon review, we do not find Claimant's appeal to the Board so deficient that waiver should apply. Claimant's appeal form to the Board challenged the WCJ's finding of fact 10, in which the WCJ set forth his credibility determinations and finding, based on Dr. Bednarz's testimony, relating to the risk of nonunion after fractures and infection being higher for smokers, that the recommended smoking cessation had a high probability of success of preventing the complications that occurred, and that Claimant's refusal to comply with the advice to stop smoking substantially contributed to what occurred. (FOF ¶ 10.) Claimant stated "[t]he WCJ's finding of fact is **not based on substantial competent evidence of record**, or **dispositive on the legal burden required** under [Employer's] **petition to suspend benefits**, and is therefore not well reasoned." (R.R. at 209a (emphasis added).) Claimant also asserted errors in the WCJ's conclusions of law 2, 3, 5, 6, and 7, relating to the WCJ's finding that Employer met its burden of proof under Section 306(f.1)(8) of the Act by showing "that reasonable treatment had been refused by Claimant and that had she undertaken such treatment, it would have resulted in a reduction of medical treatment and lessened the chance that additional future treatment would be required," (COL ¶¶ 2-3), and conclusions relating to the reasonableness of Employer's contest and award of attorney's fees and costs, (COL ¶¶ 5-7). In her challenges to conclusions of law 2 and 3, Claimant asserted:

> The WCJ made an error of law in applying the facts of this case to the legal burden and standard required of [Employer's] petition to suspend benefits. There was **nothing submitted in the evidentiary record to establish that (a) Claimant was offered medical treatment and refused it;** or (b) had she followed medical advi[c]e, her disability would have ceased such that she would currently be capable o[f] working in a full duty capacity with [] [E]mployer.

(R.R. at 209a-10a (emphasis added).)

8

Through these assertions, Claimant essentially was challenging the finding that Employer had presented record evidence establishing that she was actually offered reasonable medical treatment, that she had refused the treatment, and that had she used the treatment, she could have returned to work, as Employer was required to do to meet its burden on its petition. Claimant's arguments in her appeal form can be reasonably viewed as encompassing the Board's ultimate reason for reversing, namely that Employer had to establish the treatment Claimant was offered, a prescription for Wellbutrin (as opposed to the advice to cease smoking) was reasonable, that Employer had not presented evidence to show this treatment had a high probability of success for either Claimant or smokers in general, and that the issue of whether Claimant refused was not triggered due to Employer's failure to show reasonable medical treatment was offered. (Board Op. at 10-11.)

*Jonathan Sheppard Stables* does not require a different result. The employer there simply listed the numbers of the findings of fact ("3, 4, 5, 6, 7, 8, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23") and conclusions of law ("2-10") that it believed were "in error and [were] not supported by substantial evidence." 739 A.2d at 1088. We indicated that this was an "utter[] fail[ure] to raise . . . claims . . . with any degree of specificity," that "[i]t [was] unclear as to what '2-10' [was] meant to convey as a basis for the appeal to the Board, and [that] such a cryptic assertion clearly does not specify the errors of law committed by the WCJ . . . ." *Id.* at 1089 & n.5. Claimant's issues are more detailed than those in *Jonathan Sheppard Stables* and conveyed to the Board that she was challenging the WCJ's findings and conclusions relating to Employer's burden of proof and the evidence of the treatment she was found to have been offered and refused. Thus, *Jonathan Sheppard Stables* is distinguishable.

For these reasons, Claimant did not waive the issue upon which the Board reversed the WCJ's Decision.

### B. WCJ's Factual Findings

Employer next argues that the Board usurped the WCJ's role as fact finder when it discounted the WCJ's finding that the recommended medical treatment that Claimant refused was smoking cessation, a treatment Employer claims that all the medical experts agreed was reasonable. Claimant responds the Board did not interfere with the WCJ's fact finding role, but simply applied, correctly, the legal principles relating to an employer's burden of proof under Section 306(f.1)(8), as described by the Supreme Court in *Muse*, 522 A.2d 533.

In workers' compensation matters, the WCJ is the ultimate fact finder, and the WCJ's authority over questions of witness credibility and evidentiary weight is unquestioned and not subject to appellate review. *Jonathan Sheppard Stables*, 739 A.2d at 1088. "As the fact finder, the WCJ is entitled to accept or reject the testimony of any witness, including a medical witness, in whole or in part." *Id.* Moreover, on appeal, the reviewing body "must view the evidence in the light most favorable to the prevailing party below, including the benefit of all inferences reasonably deduced from the evidence." *Lehigh Cnty. Vo-Tech Sch. v. Workmen's Comp. Appeal Bd. (Wolfe)*, 652 A.2d 797, 800 (Pa. 1995).

In reviewing the Board's Opinion, we do not read the Board's analysis as usurping or interfering with the WCJ's role as fact finder. Rather, that analysis considered whether the WCJ's factual findings supported the WCJ's legal conclusion that Employer met its burden of proof under Section 306(f.1)(8). The disagreement is to what the reasonable medical treatment refers: the WCJ accepted the medical advice to stop smoking by itself as the reasonable medical treatment,

10

and the Board determined that medical treatment at issue was the Wellbutrin, which was prescribed to aid Claimant in achieving this goal. In other words, the Board concluded that Employer had to establish that the Wellbutrin was reasonable medical treatment for helping someone to stop smoking, and Employer had not presented medical evidence doing so. Because this reflects a difference in legal reasoning, rather than fact finding, this is not a reason for reversing the Board.

### C. Suspension of Benefits

This leaves Employer's arguments that the Board erred in reversing the WCJ's Decision because it met its burden of proof under the established standard for obtaining its requested relief, and the Board erred in adding requirements that the refused treatment had to have a prescription, and that Claimant could have, in fact, stopped smoking. Employer notes the Board's focus on the Wellbutrin prescription to reverse was misplaced because the prescription established that Claimant was given the tools to quit and did not make the effort to do so, making this matter like that in *Byrd*, 473 A.2d 723. (Employer's Br. at 31 & n.2.) Employer also asserts Claimant's own testimony that she had quit smoking for a couple of months and then restarted, despite the acknowledged risks to her ability to heal, reflects that she could quit but chose not to, demonstrating that the fault for her current condition lay with her refusal or poor efforts. (*Id.* at 31-32 (citing *Byrd*, 473 A.2d at 725).) Employer likens Claimant's actions to claimants who had their wage loss benefits suspended for, respectively, failing to attend a detoxification program, not taking their heart medicine and then suffering a heart attack, or failing to give the required effort at physical therapy. (*Id.* at 34-35 (citing *Bereznicki*, 989 A.2d 46 (detoxification program); *DePrimo v. Workmen's Comp. Appeal Bd. (Affiliated Food Distr.)*, 661 A.2d 37 (Pa. Cmwlth. 1995) (heart medicine); *Crews v. Workmen's Comp. Appeal*

11

*Bd. (B&W Tubular Prods. Grp.)*, 554 A.2d 190 (Pa. Cmwlth. 1989) (physical therapy); *Byrd*, 473 A.2d 723 (physical therapy)).) Ultimately, Employer posits that Claimant was given medical advice (stop smoking), all physicians associated with her care agreed this advice was reasonable, this advice had a high probability of success of improving her ability to heal and avoid infection, she had been given the means to adhere to that advice (the Wellbutrin), and disregarded that advice, knowing that it could lead to the results that came to pass.

Claimant responds the Board did not err because it applied the correct legal standard for reviewing a petition to suspend benefits under Section 306(f.1)(8) and *Muse*, which requires the focus to be "on the reasonableness of the services offered" **before** examining a claimant's actions. (Claimant's Br. at 15 (quoting *Muse*, 522 A.2d at 536).) Claimant maintains the WCJ erred in focusing on her continued smoking rather than requiring Employer to present, in the first instance, medical evidence demonstrating what **treatment** was offered and whether **that treatment** had a high probability of success in getting people to quit smoking or at least improving their situation, i.e., was reasonable as defined by precedent. (Claimant's Br. at 11 (citing *Mills*, 588 A.2d 1350).) According to Claimant, Employer and the WCJ focused on the medical advice to stop smoking as the treatment and its probability of preventing additional health problems, rather than on whether any treatment to aid in achieving that goal was offered and, if so, was reasonable. Claimant notes that "the record was barren on the issue of the reasonableness of the medical treatment" where no medical evidence was offered on the high probability of success of the Wellbutrin prescription at helping Claimant to quit smoking and of reducing her disability. (*Id.* at 16-18.)

Employer replies that it did not have to prove that the treatment refused would have enhanced Claimant's prospects for gainful employment. Employer argues that treatment does not have to result in improved physical capacity in order to be reasonable and necessary. (Employer's Reply Br. at 5 (citing *Cent. Highway Oil Co. v. Workers' Comp. Appeal Bd. (Mahmod)*, 729 A.2d 106 (Pa. Cmwlth. 1999)).) Employer also argues that it did not have to establish that the advice and medications provided would actually cure Claimant's smoking habit. (*Id.* at 9-10.)

At issue is the interpretation and application of Section 306(f.1)(8). Section 306(f.1)(8) states: "If the employe shall refuse **reasonable services** of health care providers, surgical, medical and hospital **services**, **treatment**, **medicines** and **supplies**, he shall forfeit all rights to compensation for any injury or increase in his incapacity shown to have resulted from such refusal." 77 P.S. § 531(8) (emphasis added). Our Supreme Court has explained that

> [t]he words of the statute could not be clearer, or its obvious purpose better served than by the words used. They are simple and direct. If one refuses **reasonable medical service**, they "shall forfeit all rights to compensation for any injury or any increase in his incapacity shown to have resulted from such refusal." 77 P[].S. § 531([8]).
>
> The purpose of the statute is to provide cure where it can reasonably be done by medical arts for the benefit of the claimant; that he not be handicapped in his health or his prospects for gainful and fulfilling employment. . . . . Who can be cured and won't soon drys sympathy and wearies the most willing helpers. One ought not in any context **avoid reasonable medical procedures to cure** infirmities that are a burden to life and the prospects of life. The statute does not command that every possibility of cure be pursued. What it does require is that **reasonable means be employed**. What is reasonable has meaning in the context of each case.

13

*Muse*, 522 A.2d at 536-37 (some emphasis omitted, some emphasis added). "The focus of the statute is on the reasonableness of the **services** offered." *Id.* at 536 (emphasis added).

It is the employer that is seeking forfeiture of benefits that "bears the burden of establishing that the claimant is no longer entitled to benefits." *Byrd*, 473 A.2d at 724. In *Muse*, the Supreme Court held that this Court had erred in interpreting this provision by "focus[ing] on the reasonableness of the claimant's refusal" observing that "[w]hile the [claimant's refusal] can certainly be a factor in determining whether the **services offered were reasonable**, it is **not** something that can be **presumed on a barren record**." 522 A.2d at 536 (emphasis added). Per the Supreme Court, "the statute requires an **employer** to **place evidence on the record** that **proposed medical services are reasonable**," and a "claimant can rest his case" after that, "hoping that the employer will have failed to carry his burden" or can "introduce evidence as to why, in his individual case, the services offered were not reasonable." *Id.* (emphasis added).

"To establish reasonableness, the evidence submitted by the employer must show that the **recommended [treatment]** (1) involves minimal risk to the patient and (2) offers a high probability of success." *Alltel, Inc. v. Workers' Comp. Appeal Bd. (Baum)*, 829 A.2d 739, 742 (Pa. Cmwlth. 2003) (some emphasis omitted; some emphasis added). The "high probability of success" prong requires consideration of "whether it is highly probable that [the treatment] will cure the claimant's health problem and enhance the claimant's prospects for gainful and fulfilling employment." *Id.* at 743. *See also Bereznicki*, 989 A.2d at 48 (same). We have clarified that a proposed reasonable treatment only has to improve a claimant's condition, not return the claimant to pre-injury health. *Litak v. Workmen's Comp.*

14

*Appeal Bd. (Comcast Cablevision)*, 624 A.2d 773, 775 (Pa. Cmwlth. 1993); *Mills*, 588 A.2d at 1352-53 ("Treatment is successful if it improves the claimant's work-related injury."). "The **claimant's reasons for refusing** [the treatment] are **irrelevant** when the **proposed [treatment] itself is not reasonable** under the forfeiture provision of Section 306(f[.1])(8)." *Alltel, Inc.*, 829 A.2d at 743 (emphasis added). *See also Mills*, 588 A.2d at 1352 ("The standard for determining whether [the c]laimant's refusal to accept medical services was reasonable is whether the **services** themselves were reasonable, not whether [the c]laimant's refusal was reasonable." (emphasis added.)).

From these cases, it is apparent that an employer seeking a forfeiture of benefits under Section 306(f.1)(8) must first present medical evidence that the medical treatment or services at issue are reasonable, meaning that they involve minimal risk and have a high probability of improving, if not curing, a claimant's work-related condition and will enhance their prospects of gainful employment. The issue of a claimant's refusal, whether they actually refused, or had a good reason for refusing the proposed treatment, is not relevant until after the employer meets its burden in the first instance.

Underlying Employer's argument is its position that the **medical advice** to Claimant to **stop smoking**, which all physicians agreed was reasonable **advice** and would be beneficial to Claimant's healing, is the equivalent of **medical treatment or services** under Section 306(f.1)(8), and that Claimant's failure to stop smoking **as advised** was the refusal of reasonable medical **treatment** sufficient to forfeit her benefits. After reviewing the statutory language, and precedent, and the evidence presented by Employer, we conclude this position is not supported.

15

We begin by noting that Section 306(f.1)(8) does not reference "medical advice," instead referencing treatment, surgery, services, medicines, or supplies – the **actual means** of **treating and improving** an injury or condition. 77 P.S. § 531(8). This makes sense because were the Court to accept Employer's position, a claimant could **forfeit benefits**, one of the **harshest** consequences under the Act, where a physician offered reasonable medical advice, without evidence that a claimant was proffered some actual treatment through which they could achieve that which was advised or could otherwise reasonably accomplish that result. Under such reasoning, an employer could obtain forfeiture by presenting evidence of a physician advising a claimant of a need to wean themselves off a toxic dosage of medications, and that the claimant did not do so, without **ever** presenting evidence that a detoxification treatment was provided to help the claimant to achieve or comply with that advice. Similarly, an employer could also obtain forfeiture by presenting evidence that a claimant was advised to lose weight to improve the success of a surgery to resolve a work-related injury without showing the claimant was provided a means to achieve the weight loss goal. Employer's position equates lifestyle **advice** as **treatment**. However, lifestyle advice, without offering a means to achieve the goal, is **not** treatment, and Employer's contrary position is not supported by the text of Section 306(f.1)(8).

An example of the application of the forfeiture provision in Section 306(f.1)(8) is found in *Folmer Ice Cream Company*, in which the claimant sustained a work-related back injury which could be improved through surgery, but the surgeon would not perform the surgery due to the claimant's weight. 330 A.2d at 585. The claimant was advised to lose weight and did not. The employer did **not** seek forfeiture on that basis; rather it agreed to pay for an institutionalized weight

16

loss program, which the surgeon indicated would be reasonable, to assist in reaching the needed weight loss goal. It was only **after** the claimant left the weight loss program that the employer sought forfeiture, claiming her abandoning the program was the refusal of reasonable medical **treatment** – **the weight loss program**. *Id.* Ultimately, the employer was unsuccessful because the claimant established that she tried the weight loss program in good faith. *Folmer Ice Cream Company* reflects that there must be **actual treatment**, not just advice.

Employer cites *Bereznicki*, *DePrimo*, *Crews*, and *Byrd*, in support of its position that Claimant's benefits should be suspended. However, in each of these cases, the claimants were **prescribed treatments or medications**, that they either refused, did not comply with, or did not give proper effort so as to make the treatment successful. For example, in *Bereznicki*, the employer's physician advised the claimant to wean herself off toxic doses of medicine being used to treat her work-related injury, and the employer **offered a detox program**, which the claimant refused, and a second **detox program of the claimant's choice**, which the claimant also refused. 989 A.2d at 46-47. In support of its suspension petition based on the claimant's refusal, the employer offered medical evidence that

> a chronic pain management **program** would allow [the c]laimant to return to normal neurologic function by decreasing the toxic doses of the medications; [] any **program** that would decrease the toxic dose of the opioids would be in [the c]laimant's best medical interest; [] a supervised detox **program** entails very little risk; and [] although such a **program** would not help [the claimant] return to her pre-injury job, it would make it possible for her to love, work[,] and play.

*Id.* at 47-48 (emphasis and alterations added). We upheld the suspension of the claimant's benefits based on her refusal to **attend** a detox program, reasoning that the employer's evidence established that the "a detox **program** would wean [the

17

c]laimant from toxic doses of medication, curing that health problem,[] allowing [the c]laimant to return to normal functioning and enhancing her prospects for gainful and fulfilling employment," even if that was not her pre-injury position. *Id.* at 48 (emphasis and alterations added) (footnote omitted).

In *DePrimo*, the claimant sustained two work-related heart attacks and, subsequently, a third because he **failed** to take the **heart medicine** prescribed to prevent future heart attacks, and we upheld the suspension of workers' compensation benefits due to the claimant's refusal of reasonable medical treatment. 661 A.2d at 39-40. In *Crews* and *Byrd*, the claimants did not comply with the employers' physicians' recommendations relating to their attending physical therapy to resolve their work-related injuries by, respectively, obtaining therapy from a different therapist with little supervision and success, and cancelling 8 of 12 physical therapy sessions, resulting in the therapist refusing to schedule further appointments. *Crews*, 554 A.2d at 191-92; *Byrd*, 473 A.2d at 724-25. In *Muse*, the claimant refused an eye surgery to remove a cataract that had resulted from his work-related injury, where that surgery had minimal risk and a high probability of succeeding in "curing" the eye issue thereby allowing him to return to his pre-injury position. 522 A.2d at 536-37.

It is a well-settled principle in workers' compensation law "that an employer takes an employee as he comes."[3] *Pawlosky v. Workmen's Comp. Appeal Bd. (Latrobe Brewing Co.)*, 525 A.2d 1204, 1209 (Pa. 1987). *See also RAG (Cyprus) Emerald Resources, L.P. v. Workers' Comp. Appeal Bd. (Hopton)*, 912 A.2d 1278,

---

[3] This is similar to the longstanding concept of the "eggshell-skull" plaintiff in tort in which a tortfeasor takes the victim as they find them. *See Offensend v. Atlantic Refining Co.*, 185 A. 745, 746-47 (Pa. 1936); 4 West's Pa. Practice Torts: Law and Advocacy § 12.26, 4 PA. PRAC § 12.26 (2024).

1285 n.7, 1288 (Pa. 2007) (same); *City of Philadelphia v. Workers' Comp. Appeal Bd. (Williams)*, 851 A.2d 838, 848 (Pa. 2004) (same); *Aqua Pa., Inc. v. Workers' Comp. Appeal Bd. (McGonigle)* (Pa. Cmwlth., No. 1202 C.D. 2019, filed May 14, 2020) slip op. 12-13 (same). Here, Claimant testified she was 54 years old, had been smoking since she was 12, or for approximately 42 years, and at the time of the injury was smoking over a pack a day. (R.R. at 196a-97a.) The only evidence Employer presented was that it was reasonable to advise Claimant to stop smoking; however, there was no evidence that **merely advising** an individual like Claimant, who has smoked for over 40 years, to quit smoking, without providing any treatment, or a means of quitting, offers a "high probability of success" of such an individual actually being able to stop smoking. The only evidence of a treatment to aid Claimant in complying with the medical advice to stop smoking, was the testimony of Claimant and Dr. Rosenthal that Claimant's family physician had prescribed Wellbutrin, Claimant tried it for a period of time, and she was ultimately unsuccessful in stopping smoking. There was **no evidence** presented as to whether Wellbutrin is a reasonable treatment for smoking cessation (involved minimal risk to Claimant and offered a high probability of success) and that she refused such treatment. The reasonableness of the Wellbutrin cannot "be presumed from a barren record." *Muse*, 522 A.2d at 536. While Employer is correct that Section 306(f.1)(8) does not require a "cure" of the health problem at issue or a return to pre-injury position, it does require proof that the **treatment improves** the work-related injury or health problem and will increase the **prospects** of a return to **some gainful employment**.[4] *See Bereznicki*, 989 A.2d at 47-48; *Litak*, 624 A.2d at 775; *Mills*,

---

[4] Employer's reliance on *Central Highway Oil Company* to argue medical treatment can be reasonable even if it does not result in improved physical capacity is misplaced. That case **(Footnote continued on next page…)**

19

588 A.2d at 1352-53. Because Employer presented no evidence on any of these points as to the Wellbutrin, and that Claimant refused such treatment, the Board did not err in finding that Employer had not met its initial burden of proof under Section 306(f.1)(8).

Employer's assertions that the Board erred in requiring that there be a prescription for a medical treatment to be reasonable and that it would actually cure Claimant's smoking habit are also unpersuasive. In finding that Employer did not meet its burden of proof, the Board did not alter the standard for proving the reasonableness of a medical **treatment**.

Finally, because Employer did not meet its initial burden of proof, we agree with the Board that Claimant's alleged refusal was not at issue and the WCJ should not have focused his analysis on Claimant's actions. *See Alltel, Inc.*, 829 A.2d at 743; *Mills*, 588 A.2d at 1352; *Muse*, 522 A.2d at 536. In suspending Claimant's benefits, the WCJ did what this Court did in *Muse*, focus on the reasonableness of the refusal, rather than on the reasonableness of the treatment in the first instance, and our Supreme Court has held that such focus was legally erroneous. 522 A.2d at 536.

---

involved a utilization review challenging the reasonableness and necessity of chiropractic treatments that were palliative in nature, meaning they were used to reduce the claimant's pain associated with a work-related injury. 729 A.2d at 107-08. Noting that these matters were determined within the context of each case and that there was no precedent that required that a **treatment for pain** had to also improve a claimant's physical capacity, we rejected the employer's claim that the treatment at issue was not reasonable and necessary and remanded for findings regarding the nature and quality of the pain relief resulting from the treatment. *Id.* at 108-09. Examining this matter in its context, the treatment involved is not related to reducing a claimant's pain and is in the context of a forfeiture petition alleging an **increase** in physical disability due to a claimant's actions. This makes this situation different from that in *Central Highway Oil Company*.

20

## III. CONCLUSION

For the foregoing reasons, the Board did not err in concluding that Employer did not meet its burden of proof under Section 306(f.1)(8) to support the suspension of Claimant's workers' compensation benefits. Therefore, the Board's Order is affirmed.

_____
RENÉE COHN JUBELIRER, President Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Wegmans Food Markets, Inc.,     :
              Petitioner     :
                        :
          v.           :    No. 687 C.D. 2024
                        :
Bonnie Cole (Workers' Compensation     :
Appeal Board),                    :
            Respondent     :

## O R D E R

    **NOW**, January 29, 2025, the Order of the Workers' Compensation Appeal Board, entered in the above-captioned matter, is **AFFIRMED**.

 

_____
RENÉE COHN JUBELIRER, President Judge